UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.

PROGRESSIVE EXPRESS INSURANCE
COMPANY, AN OHIO CORPORATION,

    Plaintiff,

v.

RASIER (FL), LLC, a Foreign Limited Liability
Company; UBER TECHNOLOGIES, INC., a
Foreign Profit Corporation; ERNANI EURIES
DE BARROS; and CAROLYN HIGNETT,

    Defendants.

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

PROGRESSIVE EXPRESS INSURANCE COMPANY, an Ohio corporation ("PROGRESSIVE"), by and through its undersigned attorney, files this Complaint for Declaratory Judgment against Defendants, RASIER (FL), LLC, a Foreign Limited Liability Company ("RASIER"); UBER TECHNOLOGIES, INC., a Foreign Profit Corporation ("UBER"); ERNANI EURIES DE BARROS ("DE BARROS"); and CAROLYN HIGNETT ("HIGNETT"), and states:

    1.    This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

**PARTIES, JURISDICTION AND VENUE**

    2.    At all times material hereto, Progressive was a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in the State of Ohio. As such, Progressive is a citizen of the State of Ohio.

3. At all times material hereto, RASIER was a foreign limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of California and conducting business within the State of Florida. The sole member and owner of RASIER is Uber Technologies, Inc. Because its sole member and owner is UBER, RASIER is a citizen of the States of Delaware and California.

4. At all times material hereto, UBER was a foreign profit corporation organized under the laws of the State of Delaware with its principal place of business in the State of California and conducting business within the State of Florida. Because it is incorporated in Delaware, and holds its principal place of business in California, UBER is a citizen of both the State of California and the State of Delaware.

5. At all times material hereto, DE BARROS was a resident and citizen of Palm Beach County, Florida.

6. At all times material hereto, HIGNETT was a resident and citizen of Palm Beach County, Florida.

7. This court has subject matter over the instant action pursuant to 28 U.S.C. § 1332(a)(1), because diversity of citizenship exists as between Progressive, on the one hand, and Defendants, on the other, and the amount in controversy exceeds $75,000.00.[1]

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the underlying accident giving rise to this dispute occurred in this district, two of the Defendants

---

[1] The subject insurance policy contains an amount of coverage totaling $1,000,000.00 and Hignett, as the claimant from the underlying accident, is claiming injuries to her cervical spine and elbow, with approximately $30,000.00 in past medical bills, a surgery recommendation for a C5-C6 fusion surgery with an estimated cost of $48,274.90, along with a claim of continuing need for treatment which demonstrates the amount in controversy is over the $75,000.00 threshold for this Court's jurisdiction.

reside in this district, and all remaining Defendants conduct business within this District.

## THE PROGRESSIVE POLICY

9. Progressive issued to RASIER a Transportation Network Company Commercial Auto Policy, under Policy No. 06250110 for the policy period from March 1, 2022 through March 1, 2023 ("the TNC Commercial Auto Policy").

10. The TNC Commercial Auto Policy was comprised of contract form Z901 FL (07/21) and was modified by the following endorsement forms: A261TNC P23 FL (12/21) (Florida Transportation Network Company Policy Endorsement), Z903TNC (05/17)(Cancellation and Nonrenewal Notice to Third Parties), Z904 (05/17) (Additional Insured Endorsement), Z904PN (01/18) (Additional Insured Primary and Noncontributory Endorsement), Z907 (05/17)(Additional Insured Endorsement Government Entities), 4757TNC P23 FL (12/21) (Ride-share Medical Payments Coverage Endorsement), and 861TNC (05/17)(Waiver of Subrogation Endorsement). A complete copy of the policy, including all endorsements, is attached hereto as Exhibit "A" and incorporated by reference herein.

11. The TNC Commercial Auto Policy provides, in pertinent part, as follows:

### COMMERCIAL AUTO POLICY

If **you** pay **your** premium when due, **we** will provide the insurance described in this policy.

### GENERAL DEFINITIONS

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**

3

1. **"Accident"** means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage**.
2. **"Auto"** means a land motor vehicle:
   a. of the private passenger, pickup body, or cargo van type;
   b. designed for operation principally upon public roads;
   c. with at least four wheels;
   d. with a seating capacity of eight or fewer passengers, including the driver; and
   e. with a gross vehicle weight rating of 10,000 pounds or less, according to the manufacturer's specifications.

   However, **auto** does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.
3. **"Bodily injury"** means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.
4. "**Covered TNC operations**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.
5. **"Declarations"** or **"declarations page"** means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage.
6. **"Goods"** means property, merchandise, food, documents, or any other tangible item. When the **"goods"** are food, **"goods"** includes service bags and containers needed to deliver the food, but only when the driver is in the course of delivering the food or returning the service bag or container to the restaurant or to its owner.
7. **"Insured auto"** means:
   a. Any **auto** while being used by a **TNC driver**, but only while engaged in providing a **pre-arranged service** utilizing the **ride-**

  **share application** access using that **TNC driver's valid credentials**; or

b. any **auto** while that **auto** is being operated by a person other than a **TNC driver** to whom **you** assigned the **valid credentials**, while being used with the **ride-share application** at the time of the **accident** or **loss** when all of the following apply:
   (i) the operator of the **auto** is engaged in providing a **pre-arranged service**;
   (ii) and the **ride-share application** was accessed using **valid credentials**.

8. **"Loss"** means sudden, direct and accident loss or damage.

***

10. **"Occupying"** means in, on, entering, exiting, or alighting from.

***

12. **"Prearranged service"** means any of the following:
   a. The operation of any **insured auto** while the driver is logged on to the **ride share application** and has recorded acceptance in the **ride-share application** of a request to provide **covered TNC operations** and is engaged in one of the following activities:
      (i) Traveling to the accepted pick-Ip location of the passenger(s) or **goods** to be delivered, including the picking up of any passenger(s) or **goods,** and the pick-up location is in the state of Florida; or
      (ii) Traveling to the final destination location of the passenger(s) or **goods** including the dropping off of any passenger(s) or **goods,** and the pick-up location was in the state of Florida.
   b. the operation of any **insured auto** while the driver is logged on to the **ride-share application** and is available to perform **covered TNC operations,** but has not recorded acceptance of such

  request in the **ride-share application** and is on a public airport premises within the state of Florida; or

 c. the operation of any **insured auto** while on a public airport premises immediately after dropping off any passenger(s) or **goods** as the result of completing a request for **covered TNC operations** using the **ride-share application:**

  (i) where the accepted pick-up location of the passenger(s) or **goods** dropped off at the public airport as recorded in the **ride-share application** was within the state of Florida; and

  (ii) the **TNC driver** or other operator of the **insured auto** has not recorded acceptance in the **ride-share application** of another request to provide **covered TNC operations.**

"**Prearranged service**" does not include a shared expense carpool or vanpool or transportation provided by a taxicab.

***

14. **"Ride-share application"** means the digital network licensed and made available by **you** that is used by a **TNC driver** to receive requests to provide **covered TNC operations.**

15. **"TNC driver"** means an individual, who is not **your** employee, providing **covered TNC operations** via the **ride-share application.**

16. **"Transportation network company"** means an entity that uses an online-enabled application, software, website, or system to connect network company users with network company drivers for the purpose of facilitating the transportation of passengers and/or non-passenger delivery of **goods**.

17. **"Valid credentials"** means the unique password and other credentials provided by you and assigned to the **TNC** driver pursuant to a contract between you and the **TNC** driver in order for that **TNC driver** to access the **ride-share application.**

6

18. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

19. "**You**", "**you**r" and "**yours**" refer to the named insured shown on the **declarations page**.

## PART I - LIABILITY TO OTHERS

**INSURING AGREEMENT- LIABILITY TO OTHERS**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury** and **property damage** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of an **insured auto** during a **prearranged service**.

\* \* \*

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

When used in Part I - Liability To Others, **insured** means:

1. **You** with respect to an **insured auto**.
2. A **TNC driver** operating an **insured auto**.
3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person or entity otherwise covered under this Part I – Liability to Others.

\*\*\*

**THE ACCIDENT, DAMAGES CLAIMED AND UNDERLYING LITIGATON**

13.   On or about March 15, 2022, DE BARROS was contracted with UBER TECHNOLOGIES and RAISER (FL) to provide **Transportation Network Company operations** to users of the Uber app via the **ride-share application** utilizing his 2017 Toyota at the time of the accident.

14. On said date, HIGNETT utilized the Uber application to arrange a **prearranged service** with DE BARROS as a **TNC driver** to Starbucks through the **Ride-share application.**

15. Upon information and belief, DE BARROS and HIGNETT then made an agreement outside of the **Ride-share application** wherein DE BARROS agreed to give HIGNETT a ride home for a fee not utilizing the Uber application.

16. DE BARROS logged off of the **Ride-share application** and began a separate trip transporting HIGNETT from Starbucks to her home that was not a **covered TNC application** when DE BARROS was involved in an accident with a 2015 Jeep Grand Cherokee Limited, owned by Caryn Liszt, causing alleged injury to HIGNETT ("the Accident").

17. A Complaint for Damages has been filed in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, Case No. 50-2023-CA-014635-XXXA-MB, entitled Carolyn Hignett v. Ernani De Barros, wherein Hignett seeks damages for her injuries suffered in the Accident ("the Underlying Litigation"), a copy of which is attached hereto as Exhibit "B" and incorporated by reference herein.

18. Progressive is providing a defense to DE BARROS in the Underlying Litigation pursuant to a Reservation of Rights.

**GROUNDS FOR DECLARATORY JUDGMENT**

19. Progressive contends that the TNC Commercial Auto Policy does not provide Bodily Injury liability coverage as the claims asserted against DE BARROS and Uber do not arise out of the ownership, maintenance or use of an **insured auto** during a **prearranged service**.

20. More specifically, Progressive contends that the TNC Commercial Auto policy does not provide Bodily Injury liability coverage to DE BARROS as, at the time of the accident, DE BARROS did not meet the definition of an **insured** under the policy because he was not providing **covered TNC operations** via the **ride-share application.**

21. In addition, because HIGNETT did not utilize the **ride share application** to arrange a **pre-arranged service** at the time of the accident, and instead made a side agreement directly with DE BARROS to complete the trip, she has no claim against an insured under this policy for an accident that any insured could become legally responsible because of an accident arising out of the ownership, maintenance or use of an **insured auto** during a **prearranged service,** as HIGNETT was not a passenger in a **prearranged service** at the time of the accident.

22. Finally, Progressive contends that at the time of the accident, the 2017 Toyota driven by DE BARROS did not meet the definition of an **insured auto** because the 2017 Toyota was not "engaged in providing a **prearranged service** utilizing the **ride-share application** accessed using that **TNC driver's valid** credentials" as required by the definition of an **insured auto** outlined in the policy.

23. Progressive, therefore, contends that it has no duty to indemnify DE BARROS for any claims asserted by HIGNETT arising out of The Accident.

24. Moreover, Progressive contends that it has no duty to defend DE BARROS in the Underlying Litigation.

25. Progressive, therefore, contends that it has no duty to pay any final judgment entered against DE BARROS in the Underlying Litigation.

26. There exists a present, ascertained, or ascertainable set of facts or present controversy as to a state of facts concerning the rights and obligations of Progressive under the Commercial Auto Policy.

27. The rights and obligations of Progressive under the TNC Commercial Auto Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the TNC Commercial Auto Policy.

28. Progressive and the Defendants have an actual, present, adverse, and antagonistic interest in the subject matter described herein.

29. All proper and present and antagonistic interests are before the court by proper process.

30. Progressive is in doubt with respect to its rights under the TNC Commercial Auto Policy and by this complaint seeks a declaration of its rights and obligations under the TNC Commercial Auto Policy with respect to the claims asserted against Progressive.

31. Pursuant to the provisions of Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, this court is invested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances.

WHEREFORE, Progressive respectfully requests this Court to enter a declaratory judgment concerning the Commercial Auto Policy, and to declare the existence or non-existence of any immunity, power, privilege or right, or any other fact upon which the existence or nonexistence of such immunity, power, privilege or right may depend, including the following:

a. That at the time of the accident, the 2017 Toyota did not constitute a **covered auto** under the TNC Commercial Auto Policy;

b. That at the time of the accident, DE BARROS did not constitute an **insured** under the TNC Commercial Auto Policy;

c. That the TNC Commercial Auto Policy does not provide bodily injury coverage DE BARROS, RASIER or UBER for any damages sought by HIGNETT as a result of the Accident;

d. That Progressive has no duty to indemnify DE BARROS, RASIER or UBER for any damages awarded to HIGNETT in the Underlying Litigation;

e. That Progressive has no duty to defend DE BARROS or UBER in the Underlying Litigation; and

f. Such other relief as the Court may deem just and proper.

DATED: December 22, 2023.

/s/ *Jessalea M. Shettle*
Jessalea M. Shettle, Esquire
Florida Bar No. 127614
FREEMAN, GOLDIS & CASH, P.A.
9600 Koger Blvd N, Ste 103
St Petersburg, FL 33702
Post Office Box 12349
St. Petersburg, FL 33733-2349
Tel:  727-327-2258
Fax: 727-362-1987
jessalea.shettle@fgclawfirm.com
crystal.siegel@fgclawfirm.com

*Attorneys for Plaintiff, Progressive Express Insurance Company*